# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

EARNEST BARNARD CLAYTON,    :
    :
        Plaintiff,    :
    :
      v.    :    Case No. 5:21-cv-335-MTT-MSH
    :
Sgt. EDWARD FLOYD, *et al.*,    :
    :
        Defendants.    :
_____    :

## ORDER

Pending before the Court are Defendants Ivey and Floyd's motion to dismiss (ECF No. 111) and Defendants Ward, Hatcher, Sikes, and Taylor's motion to dismiss (ECF No. 146) Plaintiff Earnest Barnard Clayton's second amended complaint (ECF No. 57-1). Also pending are Clayton's motion for leave to file an amended complaint (ECF No. 124), motion for leave to file a third amended complaint (ECF No. 129), motion for discovery (ECF No. 143), and motion for default judgment (ECF No. 144). For the reasons explained below, it is recommended that Defendants Ivey and Floyd's motion to dismiss be granted in part and denied in part and that Ward, Hatcher, Sikes, and Taylor's motion be granted. Clayton's motions are denied.

## PROCEDURAL BACKGROUND

Clayton filed his original complaint in case number 5:21-cv-335 ("*Clayton I*") on

September 9, 2021 (ECF No. 1).[1]  In the original complaint, Clayton alleged that on September 8, 2021, Floyd came to his cell  at Hancock State Prison ("HSP") and slammed his hand in the tray flap, causing his hand and arm to swell up severely.[2]  Compl. 5, *Clayton I*, ECF No. 1.  Both Floyd and Ivey then threatened to physically hurt Clayton again, or even to kill him, if he continued to file grievances and lawsuits.  *Id.* at 8.  Clayton also alleged that, on another occasion, Floyd deliberately sprayed him with pepper spray and once squeezed handcuffs on him so tightly that his hand and arm began to swell.  *Id.* Clayton further stated he was placed in administrative segregation where his cell was infested with ants, cockroaches, spiders, rats, mice, and various other insects.  *Id.* at 6.  In addition to Ivey and Floyd, Clayton also listed as defendants "Chief Counselor Mitchell," "Warden Toby," Sikes, "Cert Team" member Taylor, Ward, and two "John Doe" defendants.  *Id.* at 4.  However, after preliminary review, only his Eighth Amendment excessive force, First Amendment retaliation, and Eighth Amendment conditions of confinement claims against Ivey and Floyd were allowed to proceed for further factual development.  Order and R. 14, *Clayton I*, Nov. 3, 2021, ECF No. 8; Order 1-2, *Clayton I*,

---

[1]  Although the Court received the original complaint on September 13, 2021, Clayton signed it on September 9, 2021.  Compl. 10, ECF No. 1.  "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."  *United States v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012) (internal quotation marks omitted).  "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it."  *Id.*

[2]  Clayton's claims encompass acts occurring at both HSP and Baldwin State Prison ("BSP").  Compl. 3, *Clayton I*, He was at BSP until June 29, 2021, and then transferred to HSP.  1st Am. Compl. 2, *Clayton I*, ECF No. 52; Whipple Decl. ¶ 3, ECF No. 146-2.  At times, it is unclear where Clayton alleges specific events occurred, and he claims Floyd worked at both BSP and HSP.  2d Am. Compl. 2, ECF No. 57-1.

Dec. 14, 2021, ECF No. 18 (adopting recommendation).  All other claims were dismissed without prejudice.  Order 2, *Clayton I*, Dec. 14, 2021.

On November 2, 2021, the Court received Clayton's original complaint in case number 5:21-cv-389 ("*Clayton II*").  In this complaint, Clayton alleged that Ivey and Floyd brought false disciplinary charges against him and placed him in administrative segregation on or about June 29, 2021, in retaliation for filing grievances and lawsuits.  Compl. 5, 8-9, *Clayton II*, ECF No. 1.  He again complained about the conditions of his cell in segregation, contending he was exposed to an infestation of insects and rodents and the odor of feces and urine, deprived of running water, and not provided cleaning supplies to remove the feces from the walls.  *Id.* at 6-8.  Clayton also alleged he inhaled "unidentified dust particles" that caused him physical harm.  *Id.* at 6.  On preliminary review of the complaint, the Court recognized Clayton's conditions of confinement claim was duplicative of that brought in *Clayton I* and dismissed them without prejudice, instructing Clayton that he needed to amend his complaint in *Clayton I* if he wished to add additional facts to that claim.  Order & R. 10, *Clayton II*, Nov. 24, 2021, ECF No. 5; Order 1-2, *Clayton II*, Dec. 29, 2021, ECF No. 10 (adopting recommendation).  The Court also allowed a retaliation and procedural due process claim against Ivey and Floyd in relation to Clayton's placement in administrative segregation to proceed for further factual development.   Order & R. 15-16, *Clayton II*, Nov. 24, 2021; Order 1, *Clayton II*, Dec. 29, 2021.  Additional claims Clayton attempted to raise were dismissed without prejudice.  Order & R. 16, *Clayton II*, Nov. 24, 2021;  Order 1-2, *Clayton II*, Dec. 29, 2021.  Finally, the Court consolidated

*Clayton II* with *Clayton I* and administratively closed *Clayton II*.[3]   Order 2, *Clayton II*, Dec. 29, 2021.

Ivey and Floyd filed a motion to dismiss for failure to exhaust on March 2, 2022 (ECF No. 42).  The same day, the Court notified Clayton of his right to respond to the motion and/or file an amended complaint within twenty-one days.  Order 2-4, ECF No. 43. Clayton filed numerous responses in opposition to the motion to dismiss (ECF Nos. 54, 62, 75, 76, 90, 101, 103, 104, 105).  Additionally, on March 18, 2022, he filed an amended complaint (ECF No. 52).   The amended complaint included defendants and claims previously dismissed by the Court.   Specifically, Clayton reasserted a deprivation of property claim against Ivey and Floyd.  1st Am. Compl. 10, ECF No. 52.  Further, he added as defendants "Cert. Team" members Elisha Pitts and "Taylor," Georgia Department of Corrections ("GDC") Commissioner Timothy Ward, "Regional Director" Sikes, and "Regional Director" Taylor.  *Id.* at 2.

On April 1, 2022, the Court received Clayton's motion for leave to file a second amended complaint (ECF No. 57).  In the proposed second amended complaint, Clayton listed as defendants Ivey, Floyd, Sikes, Ward, "Regional Director" Taylor, and "Regional Director" Hatcher.  2d Am. Compl. 2, ECF No. 57-1.  He omitted "Cert. Team" members Elisha Pitts and "Taylor."   Clayton reasserted his conditions of confinement, excessive force, retaliation, and due process claims.  He also once again sought to assert a deprivation of property claim.  *Id.* at 3.  Finally, he sought to assert conspiracy and failure-to-protect

---

[3] From this point forward, unless otherwise noted, any citations to the record will be to *Clayton I*.

claims.  *Id.* at 9-10.  Ivey and Floyd opposed the motion for leave to amend (ECF No. 72).

Recognizing that Clayton was entitled to file his first amended complaint as a matter of course, the Court granted his first motion to amend and noted it became the operative pleading upon its filing on March 18, 2022.  Order & R. 6, Aug. 24, 2022, ECF No. 106. Therefore, the Court recommended dismissal of Ivey and Floyd's motion to dismiss the original complaint as moot, and that  recommendation was adopted.  *Id.* at 6-7; Order 3, Oct. 17, 2022, ECF No. 131 (adopting recommendation).   The Court then considered Clayton's second motion to amend, which he was not entitled to file  as a matter of course. Because Clayton filed the motion shortly after filing his first amended complaint, the Court granted the motion to amend, making the second amended complaint (ECF No. 57-1) the operative complaint.  Order & R. 7, Aug. 24, 2022.

Nevertheless, because Clayton was an inmate proceeding *pro se*, the Court was required  under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, to conduct a preliminary screening, which it proceeded to do.  *Id.* at 7-15.  As an initial matter, the Court observed that Clayton's second amended complaint omitted "Cert Team" members Pitts and Taylor as defendants, and thus deemed the claims against them abandoned.  *Id.* at 9 n.5.  The Court then allowed Clayton to add Defendants Ward, Hatcher, Taylor, and Sikes to his conditions of confinement claim.  *Id.* at 10.  The Court, however, did not allow his excessive force, due process, and retaliation claims against these Defendants to proceed, concluding Clayton's allegations were conclusory and failed to state a claim.  *Id.* at 10-11; Order 2-3, Oct. 17, 2022 (adopting recommendation).   Further, Clayton's reasserted deprivation of property claim against Floyd and Ivey was also dismissed.  Order & R. 11,

Aug. 24, 2022; Order 2-3, Oct. 17, 2022 (adopting recommendation).  The Court also rebuffed Clayton's attempt to assert a conspiracy claim against Defendants, finding his allegations "too vague and conclusory to state a claim."[4]   Order & R. 12, Aug. 24, 2022; Order 3, Oct. 17, 2022 (adopting recommendation).  Finally, the Court denied Clayton's motion to amend his complaint to add a failure-to-protect claim, stating he failed to allege facts showing a substantial risk of serious harm or Defendants' deliberate indifference. Order & R. 12-15, Aug. 24, 2022; Order 3, Oct. 17, 2022 (adopting recommendation). Thus, following preliminary screening of Clayton's second amended complaint, the following claims remained pending: 1) conditions of confinement claim against Ivey, Floyd, Sikes, Ward, Taylor, and Hatcher, 2) excessive force claim against Ivey and Floyd, 3) due process claim against Ivey and Floyd for causing him to be placed in administrative segregation, 4) retaliation claim against Ivey and Floyd for causing his placement in administrative segregation, and 5) retaliation claim against Ivey and Floyd for the threat and use of physical force.  Order & R. 16, Aug. 24, 2022; Order 3, Oct. 17, 2022.

Ivey and Floyd moved to dismiss Clayton's second amended complaint for failure to exhaust on September 7, 2022 (ECF No. 111).  Once again, Clayton filed numerous responses in opposition to the motion to dismiss.  He also filed a motion for leave to file an amended complaint (ECF No. 124) and motion for leave to file a third amended

---

[4]  In its order, the Court stated Clayton provided no date when any alleged conspiratorial meeting took place.  Order 12, Aug. 24, 2022.  However, upon further review of Clayton's second amended complaint, he referenced a meeting on June 29, 2021.  2d Am. Compl. 2.  Nevertheless, Clayton still failed to allege sufficient facts to show a conspiracy.

complaint (ECF No. 129).  On November 30, 2022, Defendants Ward, Hatcher, Sikes, and Taylor moved to dismiss Clayton's second amended complaint for failure to exhaust his administrative remedies (ECF No. 146).  Clayton has filed numerous responses in opposition to that motion.  The Court held an evidentiary hearing on the motion on January 31, 2023.[5]  In addition, Clayton has filed a motion for discovery (ECF No. 143) and a motion for default judgment against Ward, Hatcher, Sikes, and Taylor (ECF No. 144). These motions are ripe for review.

## DISCUSSION

### I.     Motions to Dismiss

Defendants move to dismiss, arguing Clayton failed to exhaust his administrative remedies.  Ivey and Floyd Br. in Supp. of Mot. to Dismiss 2d Am. Compl. 5-14, ECF No. 111-1; Ward, Hatcher, Sikes, and Taylor Br. in Supp. of Mot. to Dismiss 2d Am. Compl. 2-4, ECF No. 146-1.  The Court agrees Clayton failed to exhaust his administrative remedies on his conditions of confinement, excessive force, and retaliation claims, and recommends these be dismissed.  The Court, however, recommends Defendant Ivey and Floyd's motion be denied on the due process claim.

#### A.     Exhaustion Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

---

[5] All citations to the January 31, 2023, hearing refer to times logged contemporaneously by the Court's FTR Gold recording system on the dates of the proceedings.

as are available are exhausted." 42 U.S.C. § 1997e(a). When a grievance procedure is provided for prisoners, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process. If their initial grievance is denied, prisoners must then file a timely appeal." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (internal citation and quotation marks omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally." *Toenniges v. Ga. Dep't of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015) (per curiam).

The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant*, 530 F.3d at 1375 ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Further, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from

outside the pleadings.  *Id.* at 1376.  "[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process."  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true."  *Id.*  If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed.  *Id.*  "If the complaint is not subject to dismissal at the first step . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.* The defendant bears the burden of proof during this second step.  *Id.*  In resolving the factual dispute, a Court is authorized to make credibility determinations.  *See Bryant*, 530 F.3d at 1377-78 (finding that district court did not clearly err in determining that plaintiff's allegation that he was denied access to grievance forms was not credible); *see also Whatley v. Smith*, 898 F.3d 1072, 1082-83 (11th Cir. 2018) (upholding district court finding that one of inmate's grievances was not filed).

A prisoner need only exhaust administrative remedies that are available.  *Ross v. Blake*, 578 U.S. 632, 642 (2016).  In *Ross*, the Supreme Court held that an administrative procedure is unavailable under the PLRA when either (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[,]" (2) it is "so opaque that it becomes, practically speaking, incapable of use[,]" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross*, 578 U.S. at 643-44.   For a remedy to be available, it "must be capable of use for the accomplishment of its purpose."

9

*Turner*, 541 F.3d at 1084 (quotation marks omitted).  The burden is on the defendant to show that an administrative remedy is available, but "once that burden has been met, the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was subjectively and objectively unavailable to him."  *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (internal quotation marks omitted) (citing *Turner*, 541 F.3d at 1085).  District courts must use the two-step *Turner* analysis when addressing the availability of the grievance process.  *See Jenkins v. Sloan*, 826 F. App'x 833, 839 (11th Cir. 2020) (per curiam) (directing district courts to apply "the two-step *Turner* test when addressing the question of exhaustion and the *availability* of the grievance process").

B.    BSP and HSP Administrative Procedures

Defendants have submitted the affidavits of Pretrillion Whipple and Rashedah Mitchell, to establish that administrative remedies were available to Clayton at BSP and HSP (ECF Nos. 146-2, 111-2).  During the relevant time period, Whipple was the Chief Counselor at BSP, whose responsibilities included investigating and responding to inmate grievances at BSP.  Whipple Decl. ¶ 2, ECF No. 146-2.  Mitchell held the same position and was charged with the same responsibilities at HSP.  Mitchell Aff. ¶ 2, ECF No. 111-2. BSP and HSP follow the Georgia Department of Corrections ("GDC") Standard Operating Procedures ("SOPs") regarding grievances.  Whipple Decl.  ¶ 2; Mitchell Aff.  ¶¶ 2-3.

The SOPs mandate that an inmate must follow a two-step process in order to exhaust his remedies: (1) file an original grievance no later than ten days from the date of the incident giving rise to the grievance; and (2) file an appeal to the Central Office.  Mitchell

Ex. 1, at 8, ECF No. 111-3.  The warden has forty calendar days within which to respond

to an original grievance, though a one-time ten-day extension may be granted.  *Id.*  at 11.

An inmate may file an appeal after the warden issues a decision or after the time allowed

for the warden to make his decision expires.  *Id.* at 14.  The Commissioner has 120 days

within which to respond to a grievance appeal.  *Id.*  at 15.  Pursuant to the SOPs, an inmate

"may file a grievance about any condition, policy, procedure, or action or lack thereof that

personally affects the [inmate]."  *Id.* at 4.  There are certain matters, however, that are non-

grievable.  *Id.* at 4.  One of those is involuntary assignment to administrative segregation.

Mitchell Ex. 1, at 5.

     C.   <u>Analysis</u>

     Defendants contend Clayton failed to properly exhaust his administrative remedies

prior to filing suit.  Specifically, Ward , Hatcher, Sikes, and Taylor contend Clayton filed

no grievances related to the conditions of confinement claim alleged in this case.   Ward,

Hatcher, Sikes, and Taylor Br. in Supp. of Mot. to Dismiss 2d Am. Compl. 2-3.  Similarly,

Ivey and Floyd contend Clayton filed no grievances related to his excessive force,

conditions of confinement, and physical force retaliation claims against them.  Ivey and

Floyd Br. in Supp. of Mot. to Dismiss 2d Am. Compl. 9.  Further, they contend that even

if he filed grievances related to his due process and retaliation/administrative segregation

claims, he failed to complete the administrative process file to filing suit.  *Id.*.

     In support of their arguments, Defendants have attached copies of Clayton's

grievance history and grievances.  According to these submissions, Clayton filed two

grievances at BSP during the relevant time period prior to his transfer from BSP on June

29, 2021.[6]  Whipple Decl. ¶ 4; Whipple Ex. 1, at 2, ECF No. 146-3.  Grievance Number

321309 was filed at BSP on February 15, 2021, and alleged in its entirety:

> As a result of Earnest Clayton [] filing one or more grievance(s) about
> conditions of confinement[,] Ingram, Lt. Kelly, Eastley or Easley or Deputy
> Warden(s), C.O. Nash, Cert Team(s) Warden(s), Sloppy, Flood [sic], and
> other(s) retaliated against Clayton [] on February []9, or 10, or 11 of 2021,
> by act(s) which included but not limited to denying Clayton his property or
> failing to protect Earnest Clayton [].

Whipple Ex. 2, at 2, ECF No. 146-4.  The grievance was denied on April 3, 2021, and

Clayton's appeal was denied on April 26, 2021.  *Id.* at 3-4.  Grievance number 321311 was

filed at BSP on February 19, 2021, and alleged in its entirety:

> As [a] result[] or because of Earnest Clayton [] filing one or more
> grievance(s) about condition(s) of his confinement[,] Ingram, Lt. Kelly,
> Easley or Deputy Warden Easley, C.O. II Nash and other(s) retaliated against
> Earnest Clayton [] on February [10] or 11 of 2021, by prohibited act(s) or act
> which included but not limited to acting with [deliberate indifference] to
> Clayton health or safety.

 Whipple Ex. 3, at 3, ECF No. 146-5.  The grievance was denied on April 3, 2021, and the

Central Office denied Clayton's appeal on May 11, 2021, noting that the issue presented

in the grievance as addressed in response to grievance number 321309.  *Id.* at 2, 5.

Defendants have also submitted three grievances filed at HSP.  Grievance Number

329125 was filed on September 9, 2021, and complained about a deputy warden

confiscating Plaintiff's shoes.  Mitchell Ex. 3, at 2, ECF No. 111-5.  The grievance was

denied on October 19, 2021, and Clayton appealed on October 21, 2021.  *Id.* at 1, 3.

According to Mitchell, the Central Office denied Clayton's appeal on December 13, 2021.

---

[6] Clayton alleges in his second amended complaint that the claims arose between January 1, 2021,
and March 26, 2022.  2d Am. Compl. 2, ECF No. 57-1.

Mitchell Aff. ¶ 13.

Grievance number 329487 was submitted at HSP on September 9, 2021, and alleged that Clayton's prison file contained a document falsely indicating his involvement in a disturbance at BSP between June 21, 2021, and July 30, 2021.  Mitchell Ex. 4, at 2, ECF No. 111-6.  Clayton suggested the false document was related to his placement in administrative segregation.  *Id.*  The grievance was denied on October 21, 2021, and Clayton appealed on October 22, 2021.  *Id.* at 1, 3.  According to Mitchell, the appeal was denied on January 11, 2022.  Mitchell Aff.  ¶ 14.

Grievance number 331488 was submitted at HSP on October 25, 2021, and again alleged that Clayton's prison file contained false documents.  Mitchell Ex. 5, at 2, ECF No. 111-8.  The exact nature of the allegedly false document is unclear, but Clayton stated it was related to a pending charge of making verbal threats at HSP between September 29, 2021, and October 25, 2021.  *Id.*  According to the various grievances, Clayton was placed into Tier I administrative segregation at HSP for making verbal threats.  Mitchell Ex. 4, at 13.  Clayton's grievance was rejected on November 30, 2021, on the grounds that placement in administrative segregation was not grievable.  Mitchell Ex. 5, at 3.  Clayton appealed the grievance rejection on December 2, 2021.  Mitchell Ex. 5, at 1.  According to Mitchell, the Central Office denied the appeal on January 11, 2022.  Mitchell Aff. ¶ 15.[7]

---

[7]  Certain documents submitted by Defendants in relation to grievance numbers 329487 and 331448 refer to grievance number 331487.  The Central Office appeal denial Defendants submitted for grievance number 329487 reflects the grievance alleging involvement in a disturbance at BSP between June 21, 2021, and July 30, 2021, but lists the grievance number as 331487.  Mitchell Ex. 4, ECF No. 111-7.  The Central Office appeal denial of grievance number 331488 states that the allegations in the grievance were investigated and responded to in connection with 331487.

Clayton responds generally that he exhausted his administrative remedies as to all of his claims. *See, e.g.*, Pl.'s Resp. to 2d Mot. to Dismiss 1, ECF No. 125. In support, he has submitted various grievance receipts he contends are related to the claims in this case. He also claims he attempted to submit a grievance to mental health counselor Barnes while at BSP, but she refused to accept it. Pl.'s Suppl. Resp. to Mot. to Dismiss 2d Am. Compl. 1, ECF No. 126. Because at the first stage of the exhaustion analysis the Court must take Clayton's version of the facts as being true, his claims cannot be dismissed for lack of exhaustion at this first step. *Turner*, 541 F.3d at 1082.

The Court now makes the following factual findings and determines that Defendants have met their burden at step two regarding Plaintiff's failure to exhaust as it pertains to the conditions of confinement, excessive force, and retaliation claims. The Court agrees with Defendants that Clayton filed no grievances related to those claims for the relevant time period. While grievance numbers 321309 and 321311 refer vaguely to "conditions of confinement," the grievances do not allege any specific conditions of confinement found wanting. Whipple Ex. 2, at 2; Whipple Ex. 3, at 3. Further, the grievances also mention

---

Mitchell Ex. 5, ECF No. 111-9. According to Jennifer Vaughn, who handled the grievance appeals for the Central Office, the references to grievance number 331487 was a scrivener's error and that grievance was filed by another inmate. Vaughn Decl. ¶¶ 5-7, 11, ECF No. 111-12; Vaughn Ex. 1, ECF No. 111-13. Vaughn notes that she treated grievance numbers 329487 and 331448 as alleging the same issue because they both related to falsified evidence and Clayton's placement in administrative segregation. Vaughn Decl. ¶ 9. Similarly, Vaughn states a reference to Clayton being incarcerated at Augusta State Medical Prison in the appeal response to grievance number 329487 was also a scrivener's error. *Id.* ¶ 6. Based on the substance and timing of the grievance appeal responses, the Court finds the references to grievance number 331487 were simply scrivener's errors and that the appeal responses submitted by Defendants are in relation to grievance numbers 329487 and 331448. At the evidentiary hearing, Clayton asserted grievance number 331487 was a grievance he filed related to the claims in this case. Hr'g 11:14:56-11:15:25, 11:19-19-11:23:42. The Court finds this claim is not credible.

retaliation, but the retaliation is in the form of denying Clayton his property. *Id.* Finally, grievance number 321309 vaguely mentions failure to protect Clayton, but it provides no details as to from whom he needs protecting. Whipple Ex. 2, at 2. The Court notes that the grievances were filed in February 2021 at BSP, which is well before the specific dates Clayton alleges in his complaint when Ivey and Floyd allegedly retaliated against him through physical force at HSP. *Id.*; 2d Am. Compl. 3. These grievances were insufficient to place prison officials on notice of a problem with specific conditions of confinement, excessive force, or physical retaliation.

Regarding the grievances filed at HSP, none of them address excessive force, conditions of confinement, or retaliation. Mitchell Ex. 3, at 2; Mitchell Ex. 4, at 2; Mitchell Ex. 5, at 2. Even if they could somehow be construed as doing so, they were submitted before Clayton completed the grievance process, and hence, were insufficient to exhaust his administrative remedies. In order for an inmate to exhaust his administrative remedies, he must complete the grievance process *prior* to filing a civil action.[8] *See, e.g.*, *Brown*, 212 F.3d at 1207.

Clayton's various arguments lack credibility and do not rebut Defendants' evidence. The grievance receipts he has submitted are either illegible, pertain to grievances unrelated to his claims in this case, or support Defendants' arguments. For example, Clayton includes a grievance receipt dated January 24, 2019, but that is prior to the dates alleged in

---

[8] Even if the Court relied on the filing date in *Clayton II*, Clayton's complaint received by the Court on November 2, 2021, was still premature because the Central Office did not deny his appeal until January 11, 2022. Complaint 1, *Clayton II*; Mitchell Aff. ¶¶ 14-15.

his second amended complaint.  Pl.'s Resp. to 1st Mot. to Dismiss Attach. 3, ECF No. 75-3.  He also attaches two grievance receipts for grievances filed with "counselor Hood," but those are both dated September 9, 2021, which corresponds to the dates he filed grievance numbers 329125 and 329487, and support Defendants' argument that he failed to exhaust.  Pl.'s Suppl. Resp. 1, ECF No. 163; Pl.'s Suppl. Resp. Attach. 1, ECF No. 163-1; Mitchel Ex. 3, at 2; Mitchell Ex. 4, at 2.

Clayton's argument that he attempted to file grievances with a mental health counselor Barnes conceivably raises the issue of whether administrative remedies were available to him.  The parties disputed at the evidentiary hearing whether a mental health counselor was authorized to accept grievances from inmates, but the Court need not resolve the dispute in order to reject Clayton's argument.  His own submissions include a notation from Barnes that mental health counselors could not accept grievances.  Pl.'s Suppl. Resp. to Mot. to Dismiss 2d Am. Compl. Attach. 2, at 2, ECF No. 105-2.  Thus, Clayton was well aware that he needed to file his grievance with another counselor.  He presents no credible evidence that he was somehow prevented from doing so, and, consequently, he fails to meet his burden of proving an administrative remedy was unavailable.  Therefore, the Court recommends Defendants' motion to dismiss be granted as to Clayton's conditions of confinement, excessive force, and retaliation claims.

The Court reaches a different conclusion as to the due process claim related to placement in administrative segregation.  Placement in administrative segregation is not

grievable under GDC SOPs.[9]  Mitchell Ex. 1, at 4-5.  In order to show lack of exhaustion related to these claims, Defendants would have needed to present evidence related to Clayton's appeal—or lack thereof—of his placement to meet their burden of showing lack of exhaustion.  *See Gumm v. Chatman*, No. 5:15-CV-41-MTT-CWH, 2016 WL 8715665, at *5-6 (M.D. Ga. Jan. 22, 2016) (rejecting motion to dismiss due process claim for failure to exhaust related to placement in administrative segregation where the defendants presented no evidence to show there was an available remedy for such placement), *recommendation adopted as modified* 2016 WL 1266950 (M.D. Ga. Mar. 31, 2016). Defendants failed to do so, and the Court recommends their motion to dismiss be denied as to the due process claim.

## II.    Motions to Amend

Clayton moves for leave to file a third amended complaint (ECF No. 129).  In his proposed third amended complaint (ECF No. 129-1), Clayton seeks to add defendants and claims.  Consequently, his motion is governed both by Rule 20(a)(2) of the Federal Rules of Civil Procedure, which addresses joinder of defendants, and Rule 15, which addresses amendment of pleadings.[10]  *See Exime v. E.W. Ventures, Inc.*, 250 F.R.D. 700, 700 (S.D.

---

[9] In contrast, Clayton's retaliation claim for placement in administrative segregation was grievable because the SOPs provide that an inmate "may file a grievance alleging retaliation or harassment regardless of the form of the alleged retaliation or harassment."  Mitchell Ex. 1, at 5; *see Strozier v. Hall*, No. CV 318-057, 2019 WL 3047437, at *5 (S.D. Ga. July 11, 2019) (noting that although facility transfers were generally non-grievable under the SOPs, they were grievable if coupled with a claim of retaliation), *recommendation adopted by* 2019 WL 4033859 (S.D. Ga. Aug. 26, 2019).

[10] Rule 20 provides that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

Fla. 2008) (noting that motion to amend to add a defendant is simultaneously governed by Rule 15(a) and Rule 20(a)).  As Clayton previously amended his complaint, any further amendment requires written consent of the opposing party or the Court's leave.  Fed. R. Civ. P. 15(a).  No written consent has been filed, and so Clayton must obtain leave of the Court.  A court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A district court, however, may deny leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"An amendment is futile . . . 'when the complaint as amended is subject to dismissal because it fails to state a claim for relief.'"  *Smith v. Fye*, No. 5:17-cv-406-TES-MSH, 2018 WL 6046453, at * 6 (M.D. Ga. Nov. 19, 2018) (quoting *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017)).  A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action."  *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted).  In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.  *Id.*

at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The decision to grant or deny leave to amend is within the sole discretion of the district court. *Laurie v. Ala. Ct. of Crim. App.*, 256 F.3d 1266, 1274 (11th Cir. 2001) (per curiam).

In his proposed third amended complaint, Clayton seeks to add as defendants Cert Team member Elisha Pitts, Cert Team member Derek Wilkey, Officer Kemp, and unit manager Easley.[11] Pl.'s Mot. to Amend 1, ECF No. 129; Pl.'s Mot. to Amend Attach. 1 ("Attach. 1"), at 3, ECF No. 129-1. He seeks to add the new defendants to his conditions of confinement, excessive force, due process, and retaliation claims and to reassert the excessive force, due process, and retaliation claims against Ward, Sikes, Taylor, and Hatcher. According to Clayton's allegations, Kemp and Easley were employed at BSP, which is where he was incarcerated prior to his transfer to HSP on June 29, 2021. Attach. 1, at 3. Pitts was employed at both BSP and HSP during the relevant time period. *Id.* Wilkey worked at HSP. *Id.* at 7. As with his second amended complaint, Clayton alleges these defendants visited the segregation cells and witnessed the unconstitutional conditions of confinement but took no action. *Id.* at 4-5. He alleges Wilkey pepper-sprayed him and squeezed handcuffs tightly around his wrists for filing grievances against Ivey and Floyd. *Id.* at 6-7. Clayton also adds new excessive force and retaliation claims against Ivey and Floyd, claiming they came to his cell at HSP in July 2022, and threatened him for filing

---

[11] Clayton does not list Wilkey in the portion of the standard § 1983 form where he is asked to list each defendant, but he does identify Wilkey in the motion to amend itself and in the body of the proposed amended complaint.

grievances.  *Id.* at 7.  He further asserts Floyd punched him several times.  Attach. 1, at 7.

Clayton contends all of the Defendants were either "personally involved or/and witnesses

to the event(s) or issues."  *Id.*

Clayton's motion is denied for several reasons.[12]   First, as discussed above, an

inmate proceeding *in forma pauperis* is required to have exhausted his administrative

remedies prior to bringing an action regarding prison conditions.  42 U.S.C. § 1997e(a).

Thus, to the extent Clayton seeks to assert claims for acts occurring after he filed his

original complaint—including his new excessive force claims against Ivey and Floyd—it

is impossible that he exhausted his administrative remedies.  Therefore, his motion to

amend to add these claims is denied.  *See Davis v. Daniels*, 3:20cv5935-MCR-HTC, 2022

WL 1205329, at *3 (N.D. Fla. Feb. 8, 2022) (finding plaintiff could not amend his

complaint to add claims occurring after suit was filed because he could not have exhausted

them) (citing *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam)),

*recommendation adopted by* 2022 WL 1204100 (N.D. Fla. Apr. 22, 2022).

Second, to the extent Clayton seeks to add defendants to his excessive force,

conditions of confinement, and retaliation claims, the Court has determined above that he

failed to exhaust his administrative remedies for such claims.  Therefore, amendment

would be futile.  *See Clark v. Owens*,  No. 5:15-CV-202-MTT, 2016 WL 552587, at *1 n.1

(M.D. Ga. Feb. 10, 2016) (denying motion to recast complaint where amended complaint

---

[12]  Clayton filed another motion for leave to file a third amended complaint which appears to be a
short preliminary motion (ECF No. 124).  The motion does not contain substantive allegations or
a proposed amended complaint.  The motion is **DENIED**.

would be futile in light of failure to exhaust).  His attempt to reassert these claims against Ward, Sikes, Taylor, and Hatcher fails for the same reason.[13]

Third, Clayton has acted with undue delay regarding Easley, Kemp, Pitts, and Wilkey.  Clayton's motion to amend cannot be considered in a vacuum.  He has filed a multitude of lawsuits in a short period of time, many of them covering the same events and defendants, which he has either voluntarily dismissed or had dismissed by the Court.  *See Clayton v. Brasher, et al.*, No. 5:19-cv-398-TES-CHW (M.D. Ga. Oct. 7, 2019) (voluntarily dismissed on February 10, 2020); *Clayton v. Martin, et al.*, No. 5:20-cv-270-MTT-MSH (M.D. Ga. July 8, 2020) (involuntarily dismissed for failure to comply with the Court's orders and failure to prosecute on October 1, 2020); *Clayton v. Edward, et al.*, No. 5:21-cv-81-TES-TQL (M.D. Ga. Mar. 8, 2021) (voluntarily dismissed July 27, 2021); *Clayton v. Goodman, et al.*, No. 5:21-cv-310-TES-CHW (M.D. Ga. Aug. 24, 2021) (involuntarily dismissed for failure to comply with the Court's order on October 25, 2021); *Clayton v. Edward, et al.*, No. 5:21-cv-412-MTT-TQL (M.D. Ga. Nov. 15, 2021) (voluntarily dismissed on January 21, 2022); *Clayton v. Goodman, et al.*, No. 5:21-cv-418-TES-CHW (M.D. Ga. Nov. 17, 2021) (voluntarily dismissed on April 4, 2022, after a show cause order was entered).[14]

---

[13]  Further, the Court again finds Clayton's allegations conclusory and insufficient to state conditions of confinement, due process, and retaliation claims against these defendants and proposed defendants.  As discussed below, Clayton's proposed third amended complaint is very difficult to read, but to the extent he also seeks to reassert conspiracy and failure to protect claims, his allegations are again insufficient.

[14]  In his other filings, Clayton refers to Governor Brian Kemp as opposed to officer Kemp as alleged here.

Kemp, Easley, and at least a portion of Pitt's alleged actions occurred at BSP, and Clayton left BSP in June 2021. Clayton provides no explanation why he did not assert claims against Kemp and Easley earlier in this action. Clayton actually included Pitts as a defendant in this case until omitting him from his second amended complaint. As for Wilkey, Clayton does not allege when his use of excessive force and retaliation occurred, but in a separate lawsuit, he alleges it occurred in September 2021. Compl. 10, *Clayton v. Ward, et al.*, No. 5:22-cv-375-TES-MSH (M.D. Ga. Oct. 21, 2022), ECF No. 1. Yet from the Court can discern, Clayton did not bother to mention him in this case or any other case until late 2022. *See Clayton v. Floyd, et al.*, No. 5:22-cv-411-TES-MSH (M.D. Ga. Nov. 18, 2022). Clayton apparently believes he can add and subtract claims and defendants at his leisure without any concern for the Court's responsibility to manage its docket.[15]

## III. Other Motions

Clayton has two other pending motions the Court will address succinctly. First, Clayton moves for discovery of certain items related to his grievances. Pl.'s Mot. for Disc. 1-2, ECF No. 143. The Court is satisfied that all relevant documents related to the exhaustion issue have been submitted to the Court. Further, Clayton had the opportunity to cross examine both Mitchell and Vaughn at the evidentiary hearing as to any questions he had about his grievances and the grievance process. This motion is **DENIED**.

Second, Clayton moves for default judgment against Hatcher, Taylor, Sikes, and

---

[15] Although the Court is not doing so, it could deny Clayton's motion to file a third amended complaint on the grounds that large portions of the proposed complaint are practically illegible due to his writing style and use of extremely small font. One member of the Court's staff compared it to the Magna Carta except the Magna Carta is in Latin and easier to read.

Ward, contending they did not answer within twenty days of service.  Pl.'s Mot. for Default J. 1, ECF No. 144.  Clayton claims they were each served on August 25, 2022.  *Id.*  Clayton's motion is frivolous.  The Clerk issued the summonses on August 25, 2022, for Hatcher, Taylor, Sikes, and Ward (ECF No. 107).  The United States Marshals Service then mailed process on August 30, 2022 (ECF Nos. 115-118).  Defendants had until October 31, 2022, to file a waiver of service and answer.  Fed. R. Civ. P. 4(d)(3).  They filed waivers of service on October 28, 2022, and after being given an extension by the Court, timely moved to dismiss on November 30, 2022 (ECF Nos. 137-42, 146).  Clayton's motion for default judgment is **DENIED**.

## CONCLUSION

For the reasons explained above, it is **RECOMMENDED** that Defendant Ivey and Floyd's motion to dismiss (ECF No. 111) be **GRANTED IN PART AND DENIED IN PART** and that Defendants Ward, Hatcher, Sikes, and Taylor's motion to dismiss (ECF No. 146) be **GRANTED**.  Clayton's motion for leave to file an amended complaint (ECF No. 124), motion for leave to file a third amended complaint (ECF No. 129), motion for discovery (ECF No. 143), and motion for default judgment (ECF No. 144) are **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  Any objection should be no longer than TWENTY (20) PAGES in length.  See M.D. Ga. L.R. 7.4.  The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made.  All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 14th day of March, 2023.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE