IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **EARNEST BARNARD CLAYTON,** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO. 5:21-cv-335 (MTT) |
| **Sergeant EDWARD FLOYD,** *et al.*, | ) |
| **Defendants.** | ) |

# ORDER

United States Magistrate Judge Stephen Hyles recommends granting defendants Sergeant Edward Floyd's and Deputy Warden Ivey's motion for summary judgment (Doc. 200). Doc. 217. Plaintiff Earnest Clayton timely objected.[1] Docs. 249; 255. Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews de novo the portions of the Recommendation to which Clayton objects.

**A. Clayton's Motions**

As a preliminary matter, the Court addresses Clayton's numerous pending motions.

Clayton moves to file a third amended complaint. Docs. 218; 238; 252. Leave to amend should be "freely give[n] … when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court "need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary," courts must "assume that [the prisoner's filing] was delivered to prison authorities the day he signed it." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Clayton signed his objection on May 30, 2024. Docs. 249 at 6; 255 at 1.

previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Clayton moves to add Rashedah Mitchell, Whipple, Timothy Ward, Counselor Newton, Hood, Annette Toby, Hatcher, Sikes, Taylor, Toole, Nathanial Smith, and Officer William as defendants.  Docs. 218 at 1-2; 238 at 1; 252.  However, (1) Clayton previously alleged the same claims against Mitchell, Ward, Toby, Hatcher, Sikes, and Taylor in this case and the Court dismissed those parties; (2) Clayton previously filed suit against Toole alleging the same claims, and that case was dismissed; and (3) Clayton recently filed suit against multiple defendants, including Ward, Mitchell, Newton, Hatcher, Toole, Sikes, and Taylor, alleging claims based in part on the same conduct alleged here.  Docs. 18; 167; 252 at 1; *Clayton v. Ivey*, No. 5:22-cv-430-TES-MSH, Doc. 11 (M.D. Ga. Mar. 16, 2023); *Clayton v. Ward*, No. 5:24-cv-161-MTT-MSH, Doc. 1 at 2-6 (M.D. Ga. May 28, 2024).  Moreover, Clayton was made aware of Hood's potential involvement in this case in 2022, when the defendants submitted Hood's declaration in support of their motions to dismiss.  Docs. 73-2; 111-11.  Although Clayton alleges Smith and William were the "John Does" originally named, Clayton has not explained why he waited until *after* a motion for summary judgment was filed and *after* the Magistrate Judge entered his Recommendation to move to add those individuals.  Doc. 238 at 1.  Nor does he explain his delay as to Whipple and Hood.  He simply states these defendants' involvement is shown through evidence "that was presented to [him] after discovery and present[ed] to [him] by others."  Docs. 218 at 2; 252 at 1.  Accordingly, amendment is

not warranted due to undue delay and futility, and his motions to amend (Docs. 218; 238; 252) are **DENIED**.

Clayton also moves for the appointment of counsel. Doc. 222. The Magistrate Judge denied Clayton's previous two requests to appoint counsel. Docs. 106; 172. For the reasons previously stated by the Magistrate Judge (Doc. 106 at 15-16), Clayton's motion to appoint counsel (Doc. 222) is **DENIED**.

Next, Clayton moves for an order addressing complications with his prison mail and his discovery. Docs. 240; 250. In one motion, Clayton alleges the Court has not received his briefs and exhibits in response to the defendants' motion for summary judgment. Doc. 240. That is wrong. Docs. 204; 205—205-39; 207—207-7. In the other motion, Clayton alleges he never received the defendants' reply, an issue the Magistrate Judge already addressed in an order directing the defendants to serve their reply at Clayton's new address.[2] Docs. 225; 250. Accordingly, these motions (Docs. 240; 250) are **DENIED**.

Finally, Clayton moves for the Court to provide him with a list of his previous lawsuits. Doc. 237. This motion (Doc. 237) is **GRANTED**. The Clerk of Court is **DIRECTED** to provide to Clayton a list of the case numbers of all his previously filed § 1983 lawsuits.[3]

---

[2] Clayton complains that he did not receive the defendants' reply brief until after the Recommendation was filed. Docs. 249 at 4; 254 at 1; 255 at 1. True. Docs. 217 (Recommendation filed April 29, 2024); 226 (defendants' reply brief served at Clayton's new address on May 13, 2024). But Clayton is not entitled to file a surreply, so the timing, while atypical, is irrelevant. M.D. Ga. L.R. 7.3.1.

[3] Clayton's motion for jury trial (Doc. 231), motions for an evidentiary hearing (Docs. 232; 234; 241; 253), motion for defendants to clarify (Doc. 235), motion for sanctions (Doc. 251), motions to dismiss (Docs. 253; 254), and motion to postpone entry of judgment (Doc. 254) are **TERMINATED as moot**.

**B. Clayton's Objection**

Clayton's only remaining claim against the defendants—a procedural due process claim—is based on his placement in administrative segregation on June 29, 2021 after his transfer from Baldwin State Prison ("BSP") to Hancock State Prison ("HSP").  Doc. 217 at 13.  The Magistrate Judge recommends granting the defendants' motion for summary judgment because "Clayton has not shown Defendants were responsible for his placement in Administrative Segregation or Tier I and has not shown the conditions of his placement constituted atypical and significant hardship … sufficient to establish a constitutionally protected liberty or property interest."  *Id*. at 10-11, 19.

Clayton dedicates most of his objection to claiming that the defendants, defense counsel, and prison mailroom staff have confiscated his mail, which consisted of evidence that would allegedly preclude summary judgment.  Docs. 249 at 3-6; 255 at 1.  First, Clayton has submitted no evidence to support these allegations.  Second, Clayton does not say what this evidence would show, nor does he explain why he could not refile it.  Third, it is unclear why Clayton waited until after the Magistrate Judge's Recommendation was filed on April 29, 2024 to raise these issues, when they allegedly occurred in early April.  Docs. 217; 249 at 3.

In any event, the evidence submitted by the defendants shows they were not involved in Clayton's placement in administrative segregation in June 2021.  From April 11, 2019 to June 28, 2021, Clayton was incarcerated at BSP; Clayton transferred to HSP on June 29, 2021.  Doc. 217 at 6-7.  Upon arrival at HSP, Clayton was placed in administrative segregation, where he stayed until August 6, 2021, following HSP's classification committee's July 1, 2021 96-hour hearing and July 29, 2021 30-day

review. *Id*. at 7-8.  The Court notes that Clayton was previously placed in administrative segregation at BSP and again at HSP after June 2021.  *Id*. at 6-8.  However, the Magistrate Judge "allowed his due process claim to proceed solely in connection with his transfer from BSP and placement into HSP Tier I segregation in June 2021."  Docs. 217 at 13; *Clayton v. Ivery*, No. 5:21-cv-389-TES-CHW, Docs. 5 at 4, 13-14; 10 (M.D. Ga. Nov. 24, 2021 & Dec. 29, 2021).

Floyd was employed as a CERT team officer at BSP from March 1, 2019 to April 30, 2021, when he transferred to HSP to work as a Security Threat Group investigator.  Docs. 200-5 ¶ 3; 217 at 6.  In his position as a correctional officer, Floyd never retained authority over inmate assignment to administrative segregation, and testified he had nothing to do with Clayton's transfer to HSP or his assignment to administrative segregation.  Doc. 200-5 ¶¶ 13-17, 22-25, 28.  Clayton presented no evidence to the contrary.

Ivey was the Deputy Warden of Security at HSP at the relevant time.  Docs. 200-4 ¶ 3; 217 at 8.  The only involvement Ivey had in Clayton's stay in administrative segregation was on August 12, 2021, when he "conducted inmate Clayton's initial review and issued a decision, which was to remain in Administrative Segregation with a 96-hour Formal Hearing."  Doc. 200-4 ¶ 51.  As noted, this conduct is not before the Court.  And Ivey testified that he played no other role in Clayton's assignment, or in housing assignments generally.  *Id*. ¶¶ 9, 64.  Clayton presented no evidence to contradict this testimony.

In sum, Clayton's objection fails to show how the Magistrate Judge erred in concluding that the defendants' motion for summary judgment should be granted.

Neither Floyd nor Ivey was responsible for Clayton's June 2021 assignment to administrative segregation at HSP.  The record suggests that Clayton was assigned to administrative segregation upon his arrival at HSP because he was a new arrival and needed classification.  Doc. 200-4 ¶ 70 ("Clayton was placed in Tier I as a new arrival."), at 40 (Georgia Department of Corrections SOP 209.07 provides that a prisoner can be placed in administrative segregation when they "ha[ve] not been classified due to their arrival at a Facility."), at 143 ("[Clayton] has not been classified due to their arrival at a facility: new arrival from Baldwin State Prison.").  And the authority over his continued assignment was delegated to the prison's classification committee, and the defendants were not part of this committee.  Docs. 200-4 ¶ 6, at 140-143; 200-5 ¶ 5.  Importantly, that committee provided Clayton with notice and a formal hearing for each placement in administrative segregation at HSP.  Docs. 200-4 ¶¶ 37-40, at 140-143; 217 at 12.  Finally, Clayton failed to rebut the defendants' evidence that the restrictions in administrative segregation were "insufficient to show a state-created liberty interest," a requirement of his procedural due process claim.[4]  Docs. 200-4 ¶¶ 22-28; 217 at 17.

After review, the Court accepts and adopts the findings, conclusions, and recommendations of the Magistrate Judge. The Recommendation (Doc. 217) is **ADOPTED** and made the Order of the Court.  Accordingly, the defendants' motion for summary judgment (Doc. 200) is **GRANTED**.

---

[4] Clayton states in his objection that the defendants provided false testimony and that he "presented evidence" contradicting the defendants' statements that the conditions in administrative segregation were similar to that of the general population.  Doc. 249 at 4.  But Clayton does not provide any evidence contradicting the defendants' testimony and the only evidence Clayton submitted regarding his conditions comes from his declaration and unsupported statement of facts, which provide that he was deprived of water, work detail, and other privileges for a short period of time.  Docs. 207-1 at 1; 207-2 at 1, 3, 7.  The Magistrate Judge addressed and rejected this evidence as insufficient.  Doc. 217 at 18-19.  The Court can find no error in the Magistrate Judge's conclusion.

-7-

**SO ORDERED**, this 20th day of June, 2024.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
